UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MATTHEW JOHNS, and LENA BOWEN )
individually and on behalf of all others )
similarly situated. )
                         )      **SUPPLEMENTAL**
             Plaintiff, )      **COMPLAINT**
                         )      **FOR DECLARATORY**
                         )      **RELIEF AND DAMAGES.**
           v. )      **UNDER THE U.S. CONST.**
                         **)**      **42 USC §1983**

DAVID DO COMMISSIONER )
AND THE NEW YORK CITY TAXI )
AND LIMOUSINE COMMISSION, )
AND THE CITY OF NEW YORK )
                 Defendants. )
-----------------------------------------------------------x

Plaintiff Matthew Johns, and Lena Bowen individually and on behalf of all other similarly

situated by their attorneys Manuel Moses, of the Moses Law Office of New York PLLC and Alvin

C. Gordon and Ava M. Gordon of The Gordon Law Firm of New York LLP, as and for their

complaint allege as follows:

## NATURE OF THE ACTION

1. The New York City Taxi and Limousine Commission (TLC) enforcement division as a

matter of policy and practice has its plain clothes TLC Peace Officers stop drivers who are

dropping off or picking up people at John F. Kennedy International Airport and LaGuardia

Airport.  The purpose of this stop is to create a pretext for the driver to agree to take them

to some specified location for a fare.  This does not merely happen at airports, but upon

information and belief, this scenario plays out all over New York City.

2. Once there is an agreement to take the purported fare to a destination, another officer in

uniform returns serving them with a violation under § 19-505 General Provisions for the

Licensing of Drivers and Rule 19-506 b1 and now more specifically:

**§ 19-506 [Regulations and enforcement.]**

  "a.   Regulations and Enforcement. Except as provided by section 19-512.1, the commission may impose reasonable fines  and/or suspend or revoke any license issued by the commission where the holder has failed to comply with or has willfully or knowingly violated any of the provisions of this chapter or a rule or regulation of the commission after adjudication of such violation by the administrative tribunal established by the commission in accordance with section 2303 of the New York city charter.

  b.   1.   Except as provided in paragraph 2 of this subdivision, any person who shall permit another to operate or who shall knowingly operate or offer to operate for hire any vehicle as a taxicab, coach, wheelchair accessible van, commuter van, HAIL vehicle or for-hire vehicle in the city, without first having obtained or knowing that another has obtained a license for such vehicle pursuant to the provisions of section 19-504 of this chapter, shall be guilty of a violation, and upon conviction in the criminal court shall be punished by a fine of not less than one thousand dollars or more than two thousand dollars or imprisonment for not more than sixty days, or both such fine and imprisonment. This paragraph shall apply to the owner of such vehicle and, if different, to the operator of such vehicle."

  3.   The officers making these stops do so without articulable suspicion and without reasonable suspicion and without probable cause and find violations against person(s) due to an intentional practice of baiting them.

  4.   The stop by officers is a violation of the U.S. Supreme Court decision in (Terry v Ohio, 392 US 1 [1968]), and in the New York State Court of Appeals case (People v De Bour, 40 NY2d 210 [1976].)

5. The stop and concomitant actions by the TLC Officers are in violation of the **Fourth Amendment of the U.S. Constitution** which states:

   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

6. And a violation of the Fifth Amendment is a right against forced self-incrimination involving a crime or offense.

7. And a violation of the Sixth Amendment for a failure of defendants to produce for confrontation all necessary witnesses or accusers.

8. The stop and the concomitant actions by the TLC Officers are in violation of the **Fourteenth Amendment of the U.S. Constitution** that states:

   "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

9. The stop and concomitant actions of the TLC Officers are in violation of **New York State Constitution §12** [Security against unreasonable searches, seizures and interceptions] §12.

   "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but

upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

10. The Police Department of the City of New York has established a policy and procedure that is mindful of what is a permissible stop under the U.S. Constitution. **Exhibit One Incorporated by Reference Entitled: "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops."**

11. The TLC Peace Officers have no such policy and procedure as **Exhibit One.**

12. The TLC Peace Officers are following a long-established policy and procedure; pattern and practice; lack of training; improper training; and deliberate indifference of the policy makers and the TLC high level supervisors in conducting these unconstitutional stops of the public.

13. The individual officers and their supervisors and commissioners do not have qualified immunity for these actions as they are violating clearly established constitutional rights of the public who happen to be dropping off or picking up friends and family at the airport and are being stopped in violation of the law of the lands of these United States of America and the Empire State of New York.

14. The nature of these violations to hold liable the TLC and The City of New York comes under **(42 USCS § 1983) Civil action for deprivation of rights**.  "Every person who, *under color of any statute, ordinance, regulation*, [emphasis supplied] custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

## JURISDICTION AND VENUE

15. This action arises under the Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C § 1983, and under the New York State Constitution, Article 1 § 12. [Security against unreasonable searches, seizures, and interceptions] §12. "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

16. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(4), 1367, and 2201.

17. The acts complained of occurred in the Eastern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. 1391 (b).

## JURY DEMAND

18. Plaintiffs demand a trial by jury in this action.

## PARTIES

19. Plaintiff Matthew Johns is a putative class representative residing in the Eastern District of New York, whose deprivation of U.S. Constitutional rights by the Defendants is the same and central to the class.

20. Defendant Taxi and Limousine Commission and David Do, its commissioner, have overall responsibility for establishing and enforcing TLC policy.

21. Defendant Taxi and Limousine Commission is an agency of the City of New York charged with enforcement of the Rules and Regulations for Taxi and Limousine drivers. It is headquartered in New York County. The office houses most of its employees in Queens County. The TLC is a non-mayoral agency and is insulated by the City Charter from direct control by the mayor. The TLC is a nine-member commission, with one member acting as chairperson, who has executive responsibilities, and it is empowered by the Charter to act by a majority vote of its members. It is governed by the City Charter and by the Administrative Code of the City of New York that was enacted by the City Council, and by the TLC Rules, enacted by a majority vote of the full TLC.

22. Defendant City of New York is a municipality of the state of New York, which includes the TLC as an administrative agency.

## CLASS ACTION ALLEGATIONS

23. Matthew Johns is the Putative Lead Class Action Member.

24. His status is representative of the class as a whole.

25. Matthew Johns is a private citizen who does not currently, and had never, driven a taxi.

26. Matthew Johns, like so many other members of the class who have been deprived of their US Constitutional Rights and other Rights as stated herein, was lawfully at the airport or other New York City venues with a lawful private purpose.

27. Matthew Johns had a full hearing, on October 19, 2022, by the Office of Administrative Trials and Hearings in which all the facts surrounding his case were presented.

28. This hearing was completely recorded and transcribed for the convenience of the Federal Court's class action review and to qualify this class action.

29. The violation against Matthew Johns was dismissed and unproven based on the same or similar facts in which numerous individuals were inappropriately and illegally stopped, questioned and summoned.  In fact, a great majority of these illegal stops occur at JFK and LaGuardia Airports making Matthew Johns the perfect representative putative class member.

30. The dismissal of the violation against Mr. Matthew Johns, clearly demonstrates that the pretext for issuing the violation was unconstitutional from the start, also making him a good representative class member.

31. Matthew Johns lives in Hempstead, Queens, and works for Altice, a cable company based in Long Island City.

32. On the morning of March 8, 2022, Mr. Johns pulled up to terminal 5 at JFK airport. He was dropping off a friend who was traveling home to Jamaica, West Indies.

33. His friend exited the car and Matthew Johns put on his directional arrow light and turned his wheel to pull away.

34. Suddenly there was an uninvited tapping on the passenger side of his window.  It was an undercover TLC Peace Officer, K. Abdurraham, conducting an undercover street hail operation.  Mr. Matthew Johns was issued a summons under Rule number 19-506(b)(1) Here now is the brief account and the OATH hearing officer's decision that is incorporated by reference into the class action allegations at **Exhibit 2, Oath Administrative Hearing Officer/Judge Long Form Decision.**

35. The incident occurred on March 8, 2022, at approximately 8:21 AM. A sworn summons issued Unlicensed Vehicle Operating for Hire.

36. The officer present at the scene testified that he was conducting an undercover street hail operation in which it was claimed the driver agreed to a destination to 2222 Hempstead Turnpike for a fare of $40.  The issuing officer was no longer with the agency and was not there to testify.  **Exhibit 3 Transcript of the OATH hearing that was decided in favor of Matthew Johns.**

37. The officer present at the stop testified that he was hailing and when a vehicle would pull up to him and lower the window that when he would tell the driver his destination.  He testified once a fare was agreed upon, he would signal to the other officers to effectuate a stop.

38. Matthew Johns testified he was dropping off his friend at JFK for his flight to Kingston Jamaica, when someone was tapping on his window, so he lowered the window, and this man asked him how much to take him to Hempstead Turnpike.

39. Matthew Johns did not want to drive him, and the man asked how much to get to Hempstead Turnpike.  Matthew Johns said, I do not know why you don't check with Uber, but the man gave him *a guilt provoking story* to bait him, saying he could not get a lift and his wife was pregnant.

40. Matthew Johns testified that the guy asked if he would take $40 for the lift.  Matthew Johns felt sorry for the guy, but told him that he had to get to his job. Mr. Johns stated that he would take them to Fulton and Hempstead Turnpike which was 15 minutes from his home, so that he could get to work on time, but that he would not be taking any money, because

he could not take them all the way to their intended destination.   The man then said he would get his pregnant wife, then left and did not return.

41. A female, uniformed officer then came over and said to him: "Do you know what you did?" The officer then told him to give her his credentials, and she would tell him later.  She came back with the ticket and told Matthew Johns that he was trying to get money from the officer.  It should be noted that this uniformed officer was nowhere near the Matthew Johns car and did not hear the conversation with the plain clothes officer that had transpired, and yet she was the issuing officer of the violation.

42. As earlier stated, a transcript that was produced of the recording of the hearing is annexed to this pleading and incorporated by reference as: **Exhibit 3, Transcript of Hearing.**

43. During the hearing, an email indicating the JetBlue Flight to Jamaica that Mr. Johns obtained from his friend was provided to the hearing officer and TLC attorney.  Also provided was proof of employment and a record of hours worked, and a copy of his license/registration.

44. Matthew Johns testified that he never worked as a taxi driver, or Uber or vehicle for hire.

45. The OATH Hearing Officer did not find the recall and testimony of the TLC officer to be credible.  In addition, the officer who issued the ticket was not available to testify to what she allegedly saw and, it should be noted, nor could she have heard the conversation.

46. Quoting the Hearing Officer: "As such there was no clear credible testimony or evidence as to what exchange took place on the date of the stop to establish the respondent "agreed" to a fare of $40 when the testifying officer was not able to recall the respondent or what was said during the interaction with the respondent. Further the respondent was credible and forthcoming in his testimony that while he was willing to take the guy and his pregnant

wife to the intersection to help them, he was not willing to take any money for the ride as he was on his way home and he needed to get to work. Based on the foregoing, the court finds there was no clear credible evidence for any unlicensed for hire activity and the summons is dismissed."

47. The second representative class member is Lena Bowen.  Lena Bowen resides at 76 Gregory Street Stratford, CT 06615.  She is a part time driver for Lyft usually working on weekends, as she also has a full time job in Harrison, New York.

48. On June 25, 2023 at approximately 2:30 P.M., Lena Bowen picked up a passenger in Greenwich Conneticuit.  The passenger requested to go to the JFK airport through the Lyft app.

49. They arrived at JFK Terminal 8 Departures on or about 4PM.  The passenger exited the car quickly opening the front passenger side door to retrieve his luggage from the front seat.  He shut the door which automatically locked as Lena Bowen put the car into drive to pull away.

50. As she began to pull away from the curb, she heard a knocking on her passenger side window, which was closed.  It was a black male, in his mid 40's wearing an ordinary green shirt.  He asked a question, but it was not audible.  Coming closer, he asked, "Are you going to Connecticut and do you know the address 15 Griffin Lane?"

51. Lena Bowen told him she was going to Connecticut but she does not know the address. The man said it was in Hartford, Connecticut and "Can you bring me there?" Lena Bowen declined saying, "I am not going to Hartford."

52. He then asked her what is the closest Metro North Station to the airport. Lena Bowen responded that she only know of the one in Yonkers, New York.  He asked "What do they

usually charge?" Ms. Bowen had no intentions of taking him to Yonkers, but replied that Lyft usually charges about $45 dollars. (In fact, according to the Lyft app, the cost of the trip from JFK to Yonkers is more than twice that amount). Lena Bowen never agreed to take him to Yonkers. He then said OK and walked away.

53. Assuming these were general questions and that the conversation was over, Lena Brown rolled up her window to pull away. Suddenly a woman was knocking on her driver's side window and flashing a badge, requesting her to roll the window down.

54. The female officer said, "What you did was an illegal street hail." She wanted to see Ms. Bowen's driver's license and registration which she gave her. The officer then walked away. Lena Bowen was immediately given a summons, under protest that she did not agree to a ride, did not accept money, and did not let the male who approached her into her vehicle.

55. Lena Bowen was issued a Summons for Civil Penalties under Rule 19-506(b)(1), having a maximum penalty of $2,000. The summons states the following: "Unlicensed vehicle operating for hire: conviction may result in suspension/revocation of nys drivers license/vehicle registration. On June 25, 2023, I observed a blue Nissan bearing ct license plate az66064 pulling into terminal B departure's with one male passenger seated exclusively in the rear. Upon passenger exiting the vehicle and retrieving his bags from the front seat of the vehicle. I further observed a male passenger hailed at the driver and she rolled down her window. Passender asked if shes [sic] available to take him to the metro north station in yonkers and driver agreed to transport the passender for a fare of $45.00. Upon stop, driver provided a ct licenses [sic] 1479-1-38 with the name of bowen

l m.  I compared to the credentials she provided and was satisfied that its one and the same Owners  vehicle was used for-hire activity."

56. The female officer was at too far a distance to have heard the conversation  between Ms. Bowen and the male "passenger" referred to in the summons as hailing Ms. Bowen. This purported "passenger" was a plain clothes officer.  The issuing officer was a TLC officer from Squad 4, as listed on the summons, acting under color of municipal law of the City of New York.

57. Lena Bowen never agreed to take an illegal hail. Lena Brown has a spotless driver's record. But a violation of this type can hurt her continued employment with Lyft as she is required to obey all laws and all rules set forth in the "Driver's Code of Ethics."

58. Under the Lyft "Terms of Service," a driver is required to obey all applicable laws, rules and regulations.  The penalties for failing to abide by the terms of service can include: termination of driving privileges for Lyft, for drivers who are caught picking up passengers who hail them illegally, or they may be penalized and/or suffer reputational damage.

59.  This matter is now open and will be heard before the Office of Administrative Trials and Hearings.  It is a required personal appearance.

## THE BASIS FOR CLASS ACTION CERTIFICATION

60. Class Action Certification should be granted under Rule 23 FRCP for Class Actions because:

**"(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

**(1)** the class is so numerous that joinder of all members is impracticable;"

Our law firm completed a Freedom of Information Law request to obtain a list of the persons who were issued a summons under Rule number 19-506(b)(1) as was Matthew Johns the putative lead class member.  The class is so extensive as to be impracticable to be sued as individuals one at a time.  **Exhibit 4 FOIL Response List of Potential Class Members.  See also the public document from the annual report of the TLC showing the number of violations for unlicensed taxi drivers.**

**"(2)** there are questions of law or fact common to the class; **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and

The common questions of law is related to an issued summons under Rule number 19-506(b)(1).  The facts of Matthew Johns and Lena Bowen are an excellent representative sample of the class members because, he was deprived of his constitutional rights under a pattern and practice of stopping people indiscriminately who were in cars and were not hailing a prospective fare, and were merely dropping people off at the airport.  That created a whole sequence of events allowing a pretext for improper charges against the proposed class.  Moreover, Mr. Johns' case was *dismissed.*  **"(4)** the representative parties will fairly and adequately protect the interests of the class." Matthew Johns and Lena Bowen have promised to take an active role in this litigation as a lead class member.  Matthew Johns is a stable, competent credible person, with a long work history and no record of any criminal conduct.  And his testimony is fully preserved at the prior proceeding with OATH that is now part of the record.   Lena Bowen is also a person of good repute and a good representative class member of licensed drivers who drop off and pick up passengers.

61. Counsels of the two law firms Moses Law Office of New York PLLC and The Gordon Law Firm of New York LLP both have extensive litigation experience including State and

Federal trials; multi-state Federal Litigation; extensive litigation on 42 USC §1983 up to the Second Circuit; admission to the Eastern and Southern District of New York; the Second Circuit; the US Supreme Court and both firms have been practicing law for decades and can commit the financial resources required to litigate this matter to its conclusion.

**FIRST CLAIM FOR RELIEF**: The Deprivation of the Rights of a Class under the following laws: 42 USCS § 1983; Fourteenth Amendment of the U.S. Constitution; Fourth Amendment of the U.S. Constitution; New York State Constitution §12; and New York State Common Law.

62. Plaintiffs repeat and reallege paragraphs 1-48, as if the same were fully set forth at length herein.

63. The TLC Officers, Supervisors, Policy Makers and Commissioners, acting under color of state or muncicipal law have a pattern and practice of hailing ordinary citizens that violates the constitutional rights of drivers simply coming and going from the airport and in and around New York City. Matthew Johns and Lena Bowen are excellent representative examples of this routine pattern and practice by which the TLC instigates and stops ordinary drivers without any valid reason whatsoever. This constitutes an illegal search and seizure and is a deprivation of their U.S Constitutional rights and N.Y.S. Constitutional rights, that are common to all putative class members. It should also be noted that in both cases the plain clothes officers, in hurriedly imposing themselves on unsuspecting drivers and endangering the public by hailing in the roadway, violated: NY CLS Veh & Tr § 1157 "Pedestrians soliciting rides, or business," "a) No person shall **stand in a roadway** [emphasis supplied], for the purpose of soliciting a ride, or to solicit from or sell to an occupant of any vehicle."

64. The TLC Officers, Supervisors, Policy Makers and Commissioners, acting under color of state law are guided by a TLC policy, created by policy makers, of hailing ordinary citizens, which violates the U.S. Constitutional rights and N.Y.S. Constitutional rights of drivers simply coming and going from the airport or in and around New York City. Matthew Johns and Lena Bowen are excellent representative examples of this routine pattern and practice by which the TLC instigates and stops ordinary drivers without any reason whatsoever, and is a deprivation of their constitutional rights, common to all putative class members.

65. The TLC Officers, acting under color of state law, have highly ranked supervisors and policy makers who are fully aware and deliberately indifferent to the actions of the TLC Peace Officers [Enforcement Division] of hailing ordinary citizens. The officers are aware that such action violates the U.S. Constitutional rights and N.Y.S. Constitutional rights of drivers simply coming and going from the airport.

66. The TLC Officers, acting under color of state law, have ranked and highly ranked supervisors and policy makers who have failed to supervise and train the TLC Peace Officers in what would constitute a proper enforcement of the law. These TLC Officers instead condone the TLC Peace Officers' actions, through improper training and reinforcement of the TLC Peace Officers' actions. These TLC Officers are fully aware of the actions of the TLC Peace Officers, and more specifically, of hailing ordinary citizens in violation of the U.S. Constitutional rights and N.Y.S. Constitutional rights of drivers simply coming and going from the airport or in and around New York City.

67. In general, the TLC Officers acting under color of state law, and their supervisors and highly ranked supervisors, policy makers, academy trainers, and the commissioners of the TLC are responsible for and, in violation of, "(42 USCS § 1983) Civil action for

deprivation of rights;" "Fourteenth Amendment of the U.S. Constitution;" "Fourth Amendment of the U.S. Constitution;" and "New York State Constitution §12;" and New York State Common Law.

**SECOND CLAIM FOR RELIEF**: Pecuniary Damages and the Improper Levy and Collection of Fines under the Eighth Amendment of the United States Constitution and New York State Constitution Article 1, Section 5, and Article 1, Section 8, Clause 3 of the U.S. Constitution known as the commerce clause prohibits states from interfering with commerce.

68. Plaintiffs repeat and reallege paragraphs 1-67 as if the same were fully set forth at length herein.

69. Drivers who are licensed to carry passengers for car services such as Lyft and Uber risk the loss of job and reputation and stand to lose much more than other class categories, in monetary terms.

70. While any driver may suffer monetary and legal detriment, drivers who transport passengers for a living are a specific class of people who are at risk of experiencing far greater loss of livelihood or reputation.

71. Article 1, Section 8, Clause 3 of the U.S. Constitution, known as the Commerce Clause, prohibits states from interfering with commerce.  In the instant case, improperly stopping a licensed driver for hire coming from Connecticut to an international airport in New York City, without cause, and instead, in order to gain revenue for the City of New York and the T.L.C., under pressure to achieve a ticket quota, is an impediment of commerce within the context of 42 USC §1983.

72. "The <u>Eighth Amendment of the United States Constitution</u> and the <u>New York State Constitution, Article I, Section 5</u> forbid the imposition of excessive fines. Where a civil fine 'serves, at least in part, deterrent and retributive purposes,' it is considered punitive and is subject to the <u>Excessive Fines Clause of the Eight Amendment</u>." (<u>Matter of Ruiz v City of NY</u>, 42 Misc 3d 1233[A], 2014 NY Slip Op 50321[U] [Sup Ct, NY County 2014]).

73. Every person in this class who was ticketed and ultimately fined under circumstances that violated their fundamental liberty rights, where they were found guilty; every fine levied; every fine collected; and all judgments entered after a hearing, or on default was and are void *ab initio*.

74. These fines were unconstitutional and constituted punishment <u>and were significant in their amount</u> and effect to every member of the class who paid a fine or had a judgment entered against them.

75. Every person in this class who was ticketed and ultimately fined under circumstances that violated their fundamental liberty rights is entitled to expungement and reimbursement with statutory interest as having suffered pecuniary damages.

**THIRD CLAIM FOR RELIEF:** Malicious Prosecution.

76. Plaintiffs repeat and reallege paragraphs 1-75 as if the same were fully set forth at length herein.

77. The elements for malicious prosecution are met within the context of the deprivation of US Constitutional rights.

78. The defendants initiated a proceeding against each of the plaintiffs without probable cause.

79. The defendants knew the plaintiffs were innocent or did not care if they were innocent or not.

80. The actions of the TLC officers were reckless and callous.  They were fully aware that their actions were with unclean hands. As a matter of ethics and strong public policy permit, the court should not permit the use and abuse of the OATH (Office of Administrative Trials and Hearings for an improper purpose - to gain revenue for the City of New York and the T.L.C., under pressure to achieve a ticket quota.  Nor should improper training and lack of constitutional policy and procedures from the TLC management be condoned.

81. The actions of the TLC, its Officers, and the City of New York permitted the consequential and significant damages experienced by the class members in being mandated to attend the OATH Hearings and/or to pay the significant fine to avoid inconvenience, and to suffer significant dismay, anger, and indignation.

82. The cases of Matthew Johns and Lena Bowen are like the numerous others, where an officer without any articulable suspicion or justification stops a party plaintiff and guilt provokes them with a sense of emergency and manufactured crisis to get them to give them a ride for payment. Simply put they are baited and consequently issued a summons involving a large fine.

83. In none of these circumstances did any of the class members approach the TLC Officer(s). The TLC Officers always initiated the stop without probable cause.

84. The officer's deception was the guilt provocation.  But the intentional and negligent infliction of emotional distress was created by issuing the actual ticket and significant fine associated with the alleged offense and the deprivation of the peace and liberty of these

persons under the inalienable and afforded rights of the Constitutions and laws of the State of New York.

85. These actions are indicative of spite, malice, or evil motive to meet a ticket quota regardless of the affect or effect to the person and lending to punitive damages.

**FOURTH CLAIM FOR RELIEF**: Punitive Damages.

86. Plaintiffs repeat and reallege paragraphs 1-85, as if the same were fully set forth at length herein.

87. Due to the nature of the torts, and civil wrongs committed against many people for a prolonged period of time and with the knowledge of the TLC Commissioners and who are now sued in their individual capacities, and based on all the foregoing Plaintiff(s) state a claim for punitive damages.

**THE PROPOSED CLASS STRUCTURE:**

88. Plaintiffs repeat and reallege paragraphs 1-87, as if the same were fully set forth at length herein.

89. Plaintiff Matthew Johns and Lena Bowen are good representative lead class members of this class because their cases are well documented on the record.  A decision was rendered by OATH in the favor of Matthew Johns and we will soon have a hearing with Lena Bowen86256 along with a transcript from the hearing and a decision of the administrative law judge.  The TLC Officer during the testimony of Matthew Johns recorded various admissions that demonstrated the violation of the enumerated rights and privileges in the Constitutions which he/they violated, and his testimony provides a wide-angle establishing view of the unconstitutional policies and procedures of the acts of the TLC Officers under the control of the TLC Commissioners.

90. The class member categories are as follows:

a.  In the broadest sense: all persons who were ticketed in the five boroughs of New York City, typically at JFK and LaGuardia airports, for the violations under § 19-505 General Provisions for the Licensing of Drivers and Rule 19-506 in the last three years from the date of filing of this lawsuit.

b.  All persons who were ticketed in the five boroughs of New York City, typically JFK and LaGuardia airports, for the violations under § 19-505 General Provisions for the Licensing of Drivers and Rule 19-506 in the last three years from the date of filing of this lawsuit who attended an OATH Hearing and had their ticket dismissed.

c.  All persons who were ticketed in the five boroughs of New York City, and typically at JFK and LaGuardia airports, for the violations under § 19-505 General Provisions for the Licensing of Drivers and Rule 19-506 in the last three years from the date of filing of this lawsuit who attended an OATH Hearing and were found guilty and paid a fine.

d.  All persons who were ticketed in the five boroughs of New York City, and typically at JFK and LaGuardia airports, for the violations under § 19-505 General Provisions for the Licensing of Drivers and Rule 19-506 in the last three years from the date of filing of this lawsuit who attended an OATH Hearing had a judgment docketed against them.

e.  All persons who were ticketed in the five boroughs of New York City, and typically at JFK and LaGuardia airports, for the violations under § 19-505 General Provisions for the Licensing of Drivers and Rule 19-506 in the last three years from the date

of filing of this lawsuit who scheduled an OATH Hearing and were held in default and had a judgment docketed against them.

f.  All persons who were ticketed in the five boroughs of New York City, and typically at JFK and LaGuardia airports, for the violations under § 19-505 General Provisions for the Licensing of Drivers and Rule 19-506 in the last three years from the date of filing of this lawsuit and simply paid the fine.

g.  All persons who were ticketed and drive for a living, including and not limited to Lyft, Uber, Licensed Car Services, and Taxis.

91. Annexed hereto see the production by OATH by and through the Freedom of Information Law request indicating the large number of the proposed class and excerpts from the TLC Annual Reports.  **Exhibit 2**

**RELIEF REQUESTED:**

**IN CONCLUSION AND WHEREFORE**: plaintiffs ask this Court:

A.  To enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b) for the plaintiffs' class described herein and naming plaintiff Matthew Johns and Lena Bowen as the putative class representative for all their damages at law and in fact as plead.  The local tolling provisions would apply allowing the action to include all class members going back three years from the date of filing and ongoing until judgment or equitable relief for the class members is determined.

B.  To enter judgment declaring that defendants' policies, practices, and customs, or lack thereof is a violation of the rights, duties, liberties, and privileges, of the class members.

C.  To enter judgment declaring that the defendants' high-level supervisors are and were deliberately indifferent to the policy and procedures of the TLC resulting in the deprivation of rights articulated herein.

D.  To enter judgment declaring that the TLC lacked the necessary and requisite training of their enforcement agents, and supervisors that resulted in the deprivation of rights of the enumerated class named herein.

E.  To enter judgment that, based on the lack of policy, training, and the deliberate indifference, and length of time this has been going on, it can be concluded that a very large class of persons were improperly stopped in a baited manner without justification of proximate cause or articulable suspicion or any probable cause that a violation has been committed.

F.  To award the class compensatory, pecuniary, and punitive damages against the named individuals, (not punitive damages to the City of New York) to the class and to be determined at trial or inquest or pursuant to a "so-ordered" settlement.

G.  To award the named plaintiffs and members of the class an amount of money damages by dispositive motion, award or so ordered settlement.

H.  To award a percentage of the total class action award or settlement to the Moses Law Office of New York PLLC and the Gordon Law Firm of New York, LLP, to be determined by motion to the court.

I.  In addition to a percentage stated in letter "H." above, an award of reasonable hourly attorney fees which is permissible under 42 USC §1983 for the nature of the civilly minded work performed and the disbursements and expenses.

J.  To enjoin the defendants from continuing their behavior, methods, and means of carrying out these policies, customs, and practices to enforce the law, and to establish a protocol, policy, training, and procedure to insure that these violations do not occur in the future.

K.  To find that the members of the class were baited, psychologically coerced and/or guilt provoked, all under false pretenses while their constitutional rights and general rights were violated.

L.  To grant such other and further relief as this Court shall find just, fair, and proper.

Dated: New York, New York
        August 24, 2023

*Manuel Moses*
_____
Manuel Moses, Esquire
Moses Law Office of New York PLLC
236 West 26th Street Suite 303
New York, New York 10001
(212) 736-2624 x11
(212) 981-0528 F.
manuelmoses@icloud.com


_____
Alvin Gordon, Esq.
Ava Gordon, Esq.
The Gordon Law Firm of New York LLP
236 West 26th Street Suite 303
New York, New York 10001
(212) 766-2200
(718) 815-1515
Alvincgordon.esq@gmail.com
avagordon@glfny.com

**VERIFICATION**

State of Connecticut   )
          )ss:
County of      )

Lena Bowen who is the Plaintiff in this case now duly sworn or affirmed deposes and says that I have reviewed the complaint to certify the class action and the facts surrounding my experience and dismissal of the charges, and I am the one who is making this verification. And the statements are true. If at any time it is stated upon information and belief my statements in this regard and per my verification in general are based on the facts that I am the plaintiff complaining, I have reviewed relevant records in this case and I am also the person who suffered injuries complained of.

_Lena Bowen_

*On this, the 24th day of August 2023 before me a notary public, the above signed person Lena Bowen personally appeared, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.*

*In witness hereof, I hereunto set my hand and official seal.*

_Notary Public_

Geraldine A. Tolan
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01TO6291406
Qualified in Westchester County Certificate filed in New York County
Commission Expires October 15, 20__5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

MATTHEW JOHNS, and LENA BOWEN )
individually and on behalf of all others )
similarly situated. )
       )
                  Plaintiff, )     **COMPLAINT**
       )     **FOR DECLARATORY**
       )     **RELIEF AND DAMAGES.**
          v. )     **UNDER THE U.S. CONST.**
       )     **42 USC §1983**
DAVID DO COMMISSIONER )
AND THE NEW YORK CITY TAXI )
AND LIMOUSINE COMMISSION, )
AND THE CITY OF NEW YORK )
                  Defendants. )

---------------------------------------------------------x

**Manuel Moses, Esq.**               **Alvin Gordon, Esq.**
**Moses Law Office of New York PLLC**     **The Gordon Law Firm of New York PLLC**
**236 West 26ᵗʰ Street Suite 303**         **236 West 26ᵗʰ Street Suite 303**
**New York, New York 10001**           **New York, New York 10001**
**(212) 736-2624 x11**                **(718) 815-1515**

## VERIFIED COMPLAINT TO CERTIFY A CLASS ACTION AND FOR DELARATORY RELIEF AND DAMAGES

Pursuant to 22 NYCRR 130 -1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.

 Dated: August 24, 2023         Signature: *Manuel Moses*
                                       **Print Signer's Name: Manuel Moses**

**Service of a copy of the within is hereby admitted**

Dated:                         Print Signer's Name:

PLEASE TAKE NOTICE

☐     *that the within is a (certified) true copy of a*
        *entered in the office of the clerk of the within named Court on*
☐     *that the Order of which is a true copy will be presented to the Hon.      , one of the*
*judges of the within named Court.*