# PATROL GUIDE



| Section: Command Operations | Procedure No: 212-11 |
|---|---|
| **INVESTIGATIVE ENCOUNTERS: REQUESTS FOR INFORMATION, COMMON LAW RIGHT OF INQUIRY AND LEVEL 3 STOPS** ||
| DATE ISSUED: 06/27/16 | DATE EFFECTIVE: 06/27/16 | REVISION NUMBER: | PAGE: 1 of 12 |

**PURPOSE**  To describe the types of encounters a uniformed member of the service may initiate with a member of the public during the course of his or her official duties, the level of knowledge required for each type of encounter, the scope of a police officer's authority for each type of encounter, the measures that are permissible to protect uniformed members of the service from injury while engaged in such encounters, and the procedures to be followed by a member of the service during these encounters.

**SCOPE**  In accordance with their oath to uphold the law, uniformed members of the service must conduct investigative encounters in a lawful and respectful manner; however, nothing in this section is intended to deter an officer from initiating appropriate inquiries and investigative encounters, including stops, or using any lawful and appropriate tactics to ensure the officer's safety during such investigative encounters. Moreover, this procedure should not be interpreted to discourage an officer from engaging in voluntary consensual conversations with members of the public. Members of the service are encouraged to develop positive relationships in the communities they serve. Such positive interactions with the community foster trust and understanding that will in turn enhance public safety and officer safety.

**DEFINITIONS**  INVESTIGATIVE ENCOUNTERS - In the context of this procedure, an investigative encounter is a police interaction with a member of the public/civilian for a law enforcement or investigative purpose. The U.S. Supreme Court in the case of *Terry v. Ohio*, established the authority of the police to stop and possibly frisk a person, under certain circumstances, based upon reasonable suspicion. The New York State Court of Appeals in the case of *People v. DeBour* established the types or levels of investigative encounters and the authority of the police at each level, consistent with federal constitutional standards. These encounter levels and the authority of the police at each level are outlined in the definitions that follow.

REQUEST FOR INFORMATION (LEVEL 1 ENCOUNTER) - A request for information is an encounter between a civilian and a uniformed member of the service conducted for the purpose of requesting information from the civilian. The uniformed member of the service must have an objective credible reason to approach the civilian. This type of encounter does not require any suspicion of criminal activity. The objective is to gather information and not to focus on the person as a potential suspect. A police officer may seek information related to the reason(s) the person was approached, such as the person's name, address and destination if those questions are related to the objective credible reason for the approach. The officer may not ask accusatory questions. The person may refuse to answer questions and/or walk or even run away. Refusal to answer questions and/or walking or running away does not escalate the encounter. At this level, the officer may not seek consent to search, may not use force, and may not create a situation (either by words or actions) where a reasonable person would not feel free to leave.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 | | 2 of 12 |

**DEFINITIONS (continued)**

OBJECTIVE CREDIBLE REASON - A reason is objectively credible if it is based on more than a hunch or a whim. The reason to gather more information may relate to a public safety/service function or a law enforcement function, but need not be based on any indication of criminality.

COMMON LAW RIGHT OF INQUIRY (LEVEL 2 ENCOUNTER) - A common law right of inquiry is an encounter between a civilian and a uniformed member of the service conducted for the purpose of asking the civilian pointed or accusatory questions because the police officer has a "founded suspicion" that criminal activity is afoot. "Founded suspicion" is a lower level of suspicion than the "reasonable suspicion" required to conduct a "stop" or Level 3 encounter. Upon a founded suspicion of criminality, the officer may approach a person to ask accusatory questions and may seek consent to search; however, consent must be voluntarily given. During a "Request For Information/Level 1 Encounter," giving innocuous answers does not escalate the encounter, but providing false information may give rise to founded suspicion. During a Level 2 encounter, force may not be used, the person is free to refuse to answer questions, and is free to leave. Refusal to answer questions or walking away does not raise the level of suspicion. The officer may not create a situation (either by words or actions) where a reasonable person would not feel free to walk away.

FOUNDED SUSPICION - Founded suspicion of criminal activity arises when there is some present indication of criminality based on observable conduct or reliable hearsay information.

TERRY STOP (LEVEL 3 ENCOUNTER) - A Terry Stop/level 3 encounter is any encounter between a civilian and a uniformed member of the service in which a reasonable person would not feel free to disregard the officer and walk away. A Level 3 encounter may take place even without the threat or use of physical force by the officer; whether an encounter amounts to a stop will be judged by the facts and circumstances of the encounter. A stop may be conducted only when a police officer has an individualized reasonable suspicion that the person stopped has committed, is committing, or is about to commit a felony or Penal Law misdemeanor. The police officer may ask questions and detain the person while an expeditious investigation is conducted to determine if there is probable cause to arrest the person. The police officer may seek consent to search. The consent must be voluntarily given. Reasonable force may be used to stop a person. The type and amount of force used must be objectively reasonable under the circumstances.

REASONABLE SUSPICION - Reasonable suspicion exists when the information known to the member of the service would make an ordinarily prudent and cautious police officer under the circumstances believe criminal activity is at hand. The officer must have a particularized and objective basis for suspecting the person stopped of the criminal conduct. The officer must be able to articulate specific facts establishing justification for the stop; hunches or gut feelings are not sufficient.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

**PATROL GUIDE**

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 | | 3 of 12 |

**DEFINITIONS (continued)**

FRISK - A carefully limited running of the hands over the outside of a person's clothing feeling for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons. A frisk is authorized when the member of the service reasonably suspects the person is armed and dangerous. This includes situations in which the officer reasonably suspects that the person has committed, is committing, or is about to commit a violent crime or when the officer observes something on the person that she/he reasonably suspects is a weapon. A frisk may not be conducted to discover evidence or the proceeds or instrumentalities of a crime. A police officer cannot "frisk" a bag or item of personal property unless the officer has a reasonable suspicion that the person is armed and dangerous and the bag or item could contain a weapon and is within the person's reach.

SEARCH AFTER FRISK - In the context of the investigative encounters described in this section, a search occurs when the officer places his/her hands inside a pocket or other interior portions of a person's clothing or personal property to remove an object that the member felt during a frisk and reasonably suspects is a weapon or dangerous instrument.

**PROCEDURE**

When a uniformed member of the service engages in an investigative encounter with a civilian:

CONDUCTING A LEVEL 1 ENCOUNTER - A REQUEST FOR INFORMATION:

**UNIFORMED MEMBER OF THE SERVICE**

1. Approach the person if there is an objective credible reason to do so.
2. If not in uniform, identify yourself as a police officer verbally and by displaying your shield in a conspicuous manner, if practicable.
3. You may seek information and ask general, non-threatening questions related to the reason for the approach. However, accusatory questions are not permitted.
4. The person may refuse to answer questions and is free to leave.
5. You may inform the person that she/he is free to leave, but you are not required to do so unless she/he specifically asks.
6. When feasible and consistent with personal safety, provide the individual with an explanation for the encounter.
7. DO NOT detain the person, use or threaten the use of force, or request consent to search.

CONDUCTING A LEVEL 2 ENCOUNTER - THE COMMON LAW RIGHT OF INQUIRY:

**UNIFORMED MEMBER OF THE SERVICE**

8. Approach the person if you have a founded suspicion of criminality.
9. If not in uniform, identify yourself as a police officer verbally and by displaying your shield in a conspicuous manner, if practicable.
10. You may seek information and ask questions, including pointed and accusatory questions.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

**PATROL GUIDE**

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 | | 4 of 12 |

**UNIFORMED MEMBER OF THE SERVICE (continued)**

11. The person may refuse to answer questions and is free to leave.
12. You may request consent to search; the consent must be voluntarily given.
13. You may inform the person that she/he is free to leave, but you are not required to do so unless she/he specifically asks.
14. When feasible and consistent with personal safety, provide the individual with an explanation for the encounter.
15. DO NOT detain the person or use or threaten the use of force.

*NOTE*  *During a Level 1 or Level 2 encounter, an officer may not create a situation (either by words or actions) where a reasonable person would not feel free to walk away. A person may be detained only if a properly conducted Level 1 or Level 2 encounter yields information to support a reasonable suspicion that the person committed, was committing, or was about to commit a felony or Penal Law misdemeanor.*

<u>CONDUCTING A LEVEL 3 ENCOUNTER - A TERRY STOP:</u>

**UNIFORMED MEMBER OF THE SERVICE**

16. Upon reasonable suspicion that the person has committed, is committing, or is about to commit a felony or Penal Law misdemeanor, stop and detain the person for the purpose of conducting a criminal investigation.
    a. Notify the radio dispatcher and include the location, number of persons being stopped and whether additional units are needed.
    b. If not in uniform, identify yourself as a police officer verbally and by displaying your shield in a conspicuous manner, if practicable.
    c. Question the suspect to the extent necessary to determine whether there is probable cause to make an arrest.
    d. You may ask pointed and accusatory questions related to the reason for the stop. Refusal to answer questions or produce identification does not establish probable cause.
    e. You may seek consent to search. Consent must be voluntarily given.
    f. Reasonable force may be used to stop a person.
    g. If you have a reasonable suspicion at any point before or during the stop, that the person is armed and dangerous, you may conduct a "frisk." (See "Conducting a Frisk" below.)
    h. The suspect may be detained only as long as necessary to confirm or dispel your suspicion that she/he was committing, committed, or was about to commit a felony or Penal Law misdemeanor. Authority to detain the suspect ends when the tasks tied to the reason for the stop are completed or reasonably should have been completed.
    i. When feasible and consistent with personal safety, provide the individual with an explanation for the encounter.
    j. Obtain the suspect's name, address, and any additional information that will be required to complete the **STOP REPORT (PD383-151)**.
    k. Do not transport or otherwise move the suspect from the location where she/he is stopped unless she/he voluntarily consents or there is an exigency necessitating relocation (e.g., hostile crowd, threat to safety, hospital show-up, etc.).

**NEW • YORK • CITY • POLICE • DEPARTMENT**

**PATROL GUIDE**

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 | | 5 of 12 |

**UNIFORMED MEMBER OF THE SERVICE (continued)**

17. Release the person immediately after completing the investigation if probable cause to arrest does not exist.
    a. Provide the person stopped with an explanation for the stop, question and or frisk encounter, absent exigent circumstances.
    b. Offer the person stopped a **WHAT IS A STOP? (PD383-153)** tear-off information card, absent exigent circumstances.

CONDUCTING A FRISK, AND WHEN APPROPRIATE, A SEARCH:

**UNIFORMED MEMBER OF THE SERVICE**

18. If a police officer develops a reasonable suspicion that a person is armed and dangerous, the officer may frisk the person for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons. Reasonable suspicion that a person is armed and dangerous may arise from the officer's observations or the facts and circumstances of the encounter including:
    a. Reasonable suspicion that the suspect has committed, is committing or is about to commit, a violent crime (e.g., assault with a deadly weapon, burglary, rape, robbery, etc.)
    b. Observation of something on the person that the officer reasonably suspects is a weapon
    c. A statement by the suspect stopped that she/he is armed
    d. Information known by the officer that the suspect may be carrying a weapon, such as statements from a victim or witness.
19. The purpose of the frisk is to ensure the safety of the officer and not to locate evidence of a crime, such as drugs.
20. There is no requirement to question a suspect prior to conducting a lawful frisk.
21. Conduct the frisk by carefully running your hands down the outside of the person's clothing.
22. Where the frisk reveals an object that the member of the service reasonably suspects may be a weapon, the member of the service may search only those interior portions of the stopped person's clothing to remove the weapon.
23. An officer may not frisk a person's bag or other item of personal property unless the officer has reasonable suspicion that the person is armed and dangerous and that the bag or item of personal property could contain a weapon and is within the person's reach. If the bag/item is soft, the officer should run her/his hands down the outside of the bag/item and open it only if she/he feels the contours of what she/he believes is a weapon. If the bag/item is rigid and unlocked, the officer may open it to ensure it does not contain a weapon.

*NOTE*  *The guidelines in step "23" do not apply to mass transit system checkpoint type inspections of backpacks, containers and other carry-on items that are capable of containing explosive devices.*

**NEW • YORK • CITY • POLICE • DEPARTMENT**

**PATROL GUIDE**

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 | | 6 of 12 |

*NOTE*
*(continued)*

*Protective measures: Even if an officer does not have reasonable suspicion that a person is armed and dangerous, there are tactics for officer safety that an officer may use short of a frisk when the officer perceives her/his safety is at risk. These include ordering the individual to take her/his hands out of her/his pockets, put down or step away from an otherwise lawful object that could be used as a weapon, grabbing the person's hands if the circumstances suggest the person may be grabbing a weapon, or forcibly removing the person's hands from her/his pockets if the individual refuses to remove them from her/his pockets. Any lawfully possessed article that is removed/safeguarded by a member of the service during an investigative encounter should be returned to the individual at the conclusion of the encounter (unless probable cause is developed and the individual is arrested).*

*Requesting identification documents: At any level, an officer may ask an individual to verbally identify herself/himself or present an identification document to verify that person's identity and/or address. During Level 1 or 2 encounters, when performing this task, the officer must not create a situation where the person does not feel free to leave. Other than the operator of a motor vehicle/motorcycle, members of the public are not required to possess identification documents or present identification documents to police officers when requested. Refusal or inability to produce identification alone will not elevate the level of the encounter. Absent probable cause that the person committed an offense, she/he may not be arrested or removed to a Department facility for further investigation merely because she/he refused to produce identification.*

REQUIRED DOCUMENTATION:

**UNIFORMED MEMBER OF THE SERVICE**

24. For all Terry Stops/Level 3 encounters, prepare a **STOP REPORT** for EACH person stopped.
    a. Complete all applicable captions and follow the directions printed on the form.
    b. Check "REFUSED" in the appropriate space if the person stopped refused to identify herself/himself.
        (1) Request the patrol supervisor to respond to verify refusal.
        (2) Do not detain the person, however, if the investigation is complete and there is no probable cause to make an arrest.
    c. Select all relevant factors that led to the stop if more than one descriptive term applies.
    d. Describe in plain language (rather than numeric Penal Law section) the specific felony or Penal Law misdemeanor you suspected the person had committed, was committing or was about to commit.
    e. Describe in your own words, under the "Narrative (Describe the Circumstances That Led to the Stop)" caption, all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped had committed, was committing or was about to commit a felony or Penal Law misdemeanor.
    f. Describe in your own words, under the "Narrative (Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched)" caption, all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped was armed and dangerous. In addition, if a search

**PATROL GUIDE**

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 |  | 7 of 12 |

**UNIFORMED MEMBER OF THE SERVICE (continued)**

was conducted, describe the basis for the search, the specific area searched, and whether a weapon or other contraband was recovered.

*NOTE*   *The **STOP REPORT** is not prepared for Level 1 and Level 2 encounters unless the encounter escalates to a Level 3 Terry Stop. Similarly, the **STOP REPORT** is not prepared when an officer makes a summary arrest for an offense/crime or issues a summons for an observed violation unless the suspect was initially detained for investigation in a Level 3 Terry Stop.*

25. Enter details in **ACTIVITY LOG (PD112-145)** and include the following information in the entry:
    a. Date, time and location of stop
    b. Pedigree information, unless refused, and detailed description of the person stopped
    c. Identify in plain language, the suspected felony or Penal Law misdemeanor
    d. ICAD number, if applicable
    e. Disposition including the time the encounter was concluded
    f. Precinct serial number assigned to **STOP REPORT**, if available
    g. Describe in your own words all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped had committed, was committing or was about to commit a felony or Penal Law misdemeanor
    h. If the person is subsequently frisked, describe in your own words all of the facts and information relied upon to conclude that there was reasonable suspicion that the person stopped was armed and dangerous
    i. If a search is conducted, describe the basis for the search, the specific area searched, what was felt and whether a weapon or other contraband was recovered
    j. Any additional information not included on the **STOP REPORT**.
26. Prior to the end of your tour, submit the **STOP REPORT** and **ACTIVITY LOG** to the patrol supervisor/unit supervisor for review.
    a. The reviewing supervisor must be at least one rank higher than the member submitting the **STOP REPORT**.
27. Inform the patrol supervisor/unit supervisor of facts of the stop and, if conducted, frisk, and/or search.

SUPERVISORY AND ADMINISTRATIVE FUNCTIONS:

**PATROL SUPERVISOR/ UNIT SUPERVISOR**

28. Respond to the scene of stops when feasible.
29. Discuss the circumstances of the stop with the member of the service and review the **STOP REPORT**.
    a. Determine whether all captions are completed and all relevant check boxes are checked.
    b. Confirm that the **STOP REPORT** states in plain language a specific suspected felony or Penal Law misdemeanor.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

**PATROL SUPERVISOR/ UNIT SUPERVISOR (continued)**

    c.    Determine whether the officer's description in the "Narrative (Describe the Circumstances That Led to the Stop)" caption includes the facts and circumstances relied upon by the officer to conclude that there was reasonable suspicion that the person stopped had committed, was committing, or was about to commit a felony or Penal Law misdemeanor.

    d.    If the person was frisked, determine whether the officer's description in the "Narrative (Describe the Circumstances That Led to the Frisk and/or Search, if Conducted. Include Area Searched)" caption includes the facts and circumstances relied upon by the officer to conclude that there was reasonable suspicion that the person was armed and dangerous and, if a search was conducted, the facts and circumstances that provided the basis for the search, the area searched and whether a weapon or other contraband was recovered.

    e.    Complete the "Supervisory Action (Must Complete)" caption. Consider the facts and information as conveyed by the member and recorded on the **STOP REPORT** and in the member's **ACTIVITY LOG** and determine whether:

        (1)    The stop was based upon reasonable suspicion of a felony or Penal Law misdemeanor

        (2)    If the person was frisked, whether the frisk was supported by a reasonable suspicion that the person was armed and dangerous; and

        (3)    If the person was searched, whether there was a sufficient basis for the search.

    f.    If appropriate, instruct member of the service and/or refer for additional training and/or other remedial action, including, disciplinary action and indicate such in the "Follow-Up Action (If appropriate)" caption.

    g.    Direct the member to make necessary corrections to the **STOP REPORT** if the report is inaccurate or incomplete.

    h.    Complete and sign the **STOP REPORT**.

30.    Review the member's **ACTIVITY LOG** to determine whether the entry is complete and describes the facts and circumstances that provided the bases for the stop as well as any frisk and/or search if conducted.

31.    If force was used, determine whether the use of force was reasonable under the circumstances of the encounter.

32.    Prior to the end of tour, return signed **STOP REPORT** and **ACTIVITY LOG** back to member upon completion of the review.

*NOTE*    *If the patrol supervisor/unit supervisor is unavailable, the uniformed member of the service will submit the **STOP REPORT** and **ACTIVITY LOG** to the desk officer/designee. The desk officer/designee will comply with steps "29" through "32."*

**UNIFORMED MEMBER OF THE SERVICE**

33.    Make a photocopy of the **ACTIVITY LOG** entry for the stop.

34.    Submit the original **STOP REPORT** and the photocopy of the **ACTIVITY LOG** entry to the desk officer/designee.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 | | 9 of 12 |

**DESK OFFICER/ DESIGNEE**

35. Ensure that the **STOP REPORT** is entered into the Department's Automated Stop Report System for generation of the next sequential precinct serial number within forty-eight hours from the time of occurrence.
    a. Ensure that the next sequential serial number is entered in the appropriate caption on the **STOP REPORT**.
36. Electronically "sign-off" and administer any necessary supervisory functions of the Department's Automated Stop Report System for those **STOP REPORTS** that are awaiting sign off in the queue.
    a. Ensure that the **STOP REPORTS** are electronically "signed–off" within forty-eight hours from the time of occurrence.
    b. Ensure that a separate precinct serial number is assigned to each **STOP REPORT**.
37. Have the **STOP REPORT**, with the sequential serial number entered in the appropriate caption, photocopied.
    a. Attach the photocopy of the member's **ACTIVITY LOG** to the photocopy of the **STOP REPORT** and file in the command's **STOP REPORT** binder.
    b. Submit the original **STOP REPORT** to the command clerk/designated member.

**COMMAND CLERK/ DESIGNATED MEMBER**

38. Print out copy of the **Stop Report Index** <u>daily</u> during the first platoon, utilizing the Department's Automated Stop Report System.
    a. Ensure **Stop Report Index** is filed with photocopies of original **STOP REPORT** in command binder.
39. Forward original **STOP REPORT** to the Criminal Records Section on a daily basis.

*NOTE*  *Commanding officer/designee will designate a member to perform the command clerk duties listed above, if the command clerk is not available.*

**INTEGRITY CONTROL OFFICER**

40. Personally conduct, in conformance with the Quality Assurance Division's self-inspection program, the command self-inspection of **STOP REPORTS**.
41. Ensure that the patrol supervisor/unit supervisor reviews the **STOP REPORTS** and **ACTIVITY LOGS** and that appropriate actions are taken where necessary.
    a. In assessing the patrol/unit supervisor's review of officers' Level 3 encounters, determine whether the supervisor appropriately reviewed the stop and, if conducted, the frisk and search, and any force used. In making these determinations, consider whether the supervisor examined the information recorded on the **STOP REPORT** and **ACTIVITY LOG** and appropriately evaluated whether the information reasonably supports the conclusion that the member's actions were based upon reasonable suspicion.
    b. Take appropriate remedial action if warranted, including discipline if appropriate.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

**PATROL GUIDE**

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 | | 10 of 12 |

| | | |
|---|---|---|
| **INTEGRITY CONTROL OFFICER (continued)** | c. | Inform commanding officer and training sergeant of any matters of importance including deficiencies or patterns of deficiencies in regards to the bases of stops and/or frisks conducted or in the preparation of **STOP REPORTS** and **ACTIVITY LOGS**. |
| **EXECUTIVE OFFICER** | 42. | Personally conduct, in conformance with the Quality Assurance Division's self-inspection program, the command self-inspection of "POLICE INITIATED ENFORCEMENT." |
| **COMMANDING OFFICER** | 43. | Assume responsibility for the integrity of the administration of this procedure. |
| | 44. | Consult with the executive officer, integrity control officer, platoon commanders, special operations lieutenant, training sergeant, patrol supervisors/unit supervisors to ensure the constitutionality and effectiveness of stops. |

      a.    Identify training needs and necessary remedial or disciplinary actions required.

      b.    Prepare a report on **Typed Letterhead** addressed to the Commanding Officer, Legal Bureau requesting remedial training for any members of the service identified as having a deficient understanding of the law pertaining to street encounters.

*NOTE*  *Minor or inadvertent mistakes in documentation or isolated cases of erroneous but good-faith stops or frisks by members of the service should ordinarily be addressed through instruction and training. In most instances, instruction and training should be accomplished at the command level. The application of the law in this area can be complicated, and investigative encounters are fluid situations in which one event or observation can alter the level of suspicion or danger. A single erroneous judgment will not generally warrant referral to the Legal Bureau for retraining. However, members of the service who evince a lack of comprehension of the core concepts of the law governing this procedure should be referred to the Legal Bureau.*

**TRAINING SERGEANT**  45. Conduct command level training to help ensure compliance with the Department's policy regarding investigative encounters.

      a.    Periodically review and identify command-wide and individual training needs and necessary remedial actions.

      b.    Record training sessions in the Training Attendance Certification Transcript Integration Collection System (TACTICS) to assist with future review and analysis of command's compliance and training in investigative encounters.

      c.    Identify members who have been referred for training in **STOP REPORTS** and ensure that the training is conducted.

           (1)    Track, record and report such training to the commanding officer on a quarterly basis.

*ADDITIONAL DATA*  *There are many facts and circumstances that may lead a police officer to conclude that there is reasonable suspicion that a person has committed, is committing or is about to commit a felony or Penal Law misdemeanor. Such factors may include information received from third parties as well as the actions of the suspect, the suspect's physical*

**NEW • YORK • CITY • POLICE • DEPARTMENT**

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 |  | 11 of 12 |

*ADDITIONAL DATA (continued)*

*and temporal proximity to the scene of a crime, the suspect's resemblance to the specific description of a perpetrator of a crime (based on more than just race, age and gender) and information known to the officer about the suspect or particular location, among other factors. Each situation is unique and the information available to members of the service will vary.*

*"Furtive movements" or mere presence in a "high crime area," standing alone, are insufficient bases for a stop or frisk. Moreover, even when used in combination with other stop factors, the stopping officer must be able to specifically describe the suspicious nature of the "furtive movements" which she/he observed, and she/he must not define the "high crime area" too broadly, such as encompassing an entire precinct or borough. In addition, a person may not be stopped merely because he or she matches a generalized description of a crime suspect, such as an 18-25 year old male of a particular race. If a physical description is the only factor relied on by the stopping officer, it must be more specific to form the basis for a stop. Individuals may not be targeted for stops and frisks because they are members of a racial or ethnic group that appears more frequently in local crime suspect data. Race may only be considered where the stop is based upon a specific and reliable suspect description that includes not just race, age and gender, but other identifying characteristics and information. When a police officer carries out a stop based on reasonable suspicion that a person fits such a description, the officer may consider the race of the suspect, just as the officer may consider the suspect's height or hair color.*

*Commanding officers of commands other than patrol precincts, PSAs and transit districts (e.g., Detective Bureau, Strategic Response Group, etc.) will designate a supervisor to perform the desk officer duties listed above. The desk officer/designee in commands other than a patrol precinct, PSA or transit district who has received a completed **STOP REPORT**, will ensure that the data is entered into the Department's Automated Stop Report System for generation of the next precinct of occurrence serial number within <u>forty-eight hours from the time of occurrence</u>. The desk officer/designee in commands other than a patrol precinct, PSA or transit district will ensure that the **STOP REPORTS** are forwarded to the Criminal Records Section on a daily basis. Photocopies of the **STOP REPORTS** will be sent via Department mail to the precinct of occurrence daily. The precinct of occurrence will then place the photocopies in sequential order in their **STOP REPORT** command binder. In addition, the desk officer/designee will utilize the Department's Automated Stop Report System and ensure those **STOP REPORTS** completed by members of their command are signed off within <u>forty-eight hours from the time of occurrence</u>.*

*Desk officers/designees in commands other than patrol precincts, PSAs or transit districts will maintain a standardized **STOP REPORT** command binder with photocopies of **STOP REPORTS** prepared by their respective command. Additionally, a corresponding **Stop Report Index** for the command will be printed out daily and will likewise be maintained in the command binder.*

*Commanding officers will ensure that photocopied **STOP REPORTS** maintained in the command binder are removed and filed in the command by year of occurrence every January 1st and quarterly thereafter (April 1st, July 1st and October 1st).*

*All uniformed members of the service below the rank of Captain are required to carry **ACTIVITY LOG** inserts **INVESTIGATIVE ENCOUNTERS (PD383-090)** and **SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT (PD383-151A)** when performing patrol duties in uniform.*

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 212-11 | 06/27/16 | | 12 of 12 |

*RELATED*             *Activity Logs (P.G. 212-08)*
*PROCEDURES*      *Department Policy Prohibiting Racial Profiling and Bias-Based Policing (P.G. 203-25)*
                             *Executive Officer (P.G. 202-10)*
                             *Interior Patrol (P.G. 212-59)*
                             *Interior Patrol of Housing Authority Buildings (P.G. 212-60)*

*FORMS AND*       *ACTIVITY LOG (PD112-145)*
*REPORTS*            *STOP REPORT (PD383-151)*
                             *INVESTIGATIVE ENCOUNTERS (PD383-090)*
                             *SUPPLEMENTAL INSTRUCTIONS FOR PREPARATION OF STOP REPORT (PD383-151A)*
                             *WHAT IS A STOP? (PD383-153)*
                             *Stop Report Index*

**NEW • YORK • CITY • POLICE • DEPARTMENT**