UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MATTHEW JOHNS, and LENA BOWEN,[1]

                         Plaintiffs,

                                                    **MEMORANDUM & ORDER**
              - against -                            23-CV-3497 (PKC) (SJB)

DAVID DO, TAXI AND LIMOUSINE
COMMISSION, and CITY OF NEW YORK,

                         Defendants.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiffs Matthew Johns ("Johns") and Lena Bowen ("Bowen") (collectively, "Plaintiffs")

bring this action on behalf of themselves and similarly situated individuals against Defendants City

of New York ("City"), the New York City Taxi and Limousine Commission ("TLC"), and TLC

Commissioner David Do ("Commissioner Do") (collectively, "Defendants").  Presently before the

Court is Defendants' motion to dismiss.  For the reasons discussed below, Defendants' motion to

dismiss is granted, and Plaintiffs' Amended Complaint is dismissed.

## BACKGROUND

### I.    Factual Allegations[2]

The Amended Complaint broadly challenges the TLC's practice of having plainclothes

TLC officers "stop drivers who are dropping off or picking up people at John F. Kennedy

---

[1] The Court notes that the docket sheet incorrectly lists Stanford Miller, who is a plaintiff in a related case, as a plaintiff in this action.  *See Miller v. City of New York*, No. 23-CV-65 (PKC) (SJB) (filed on Jan. 5, 2023).  The Clerk of Court is respectfully directed to terminate Stanford Miller from the docket.

[2] The following facts are derived from the Amended Complaint and the exhibits attached thereto.  *See TileBar v. Glazzio Tiles*, No. 22-CV-3823 (PKC) (RML), 2024 WL 1186567, at *11 (E.D.N.Y. Mar. 15, 2024) ("[On a Rule 12(b)(6) motion,] in addition to the facts alleged in the complaint, the court may also consider documents that are appended to the complaint, incorporated

International Airport [('JFK Airport')] and LaGuardia Airport," as well as other locations throughout New York City. (Am. Compl., Dkt. 20, ¶ 1.) According to Plaintiffs, "[t]he purpose of th[ese] stop[s] is to create a pretext for the driver to agree to take [the officer] to some specified location for a fare." (*Id.*) Once the driver agrees to take the undercover officer to their desired location, "another officer in uniform returns [to] serv[e] [the driver] with a violation" under N.Y.C. Admin. Code § 19-506(b) (the "Street Hail Law"), which, *inter alia*, prohibits operating or offering to operate a for-hire vehicle without the appropriate TLC license." (*Id.* ¶ 2.)

### A. Matthew Johns

Plaintiff Johns "is a private citizen" who lives in Queens, New York, and has never driven a taxi. (*Id.* ¶¶ 25, 31.) On the morning of March 8, 2022, Johns dropped a friend off at JFK Airport. (*Id.* ¶ 32.) After his friend exited the car, Johns put on his directional arrow light and turned his wheel to pull away. (*Id.* ¶ 33.) Shortly thereafter, a man, who turned out to be an undercover TLC officer, began tapping on the passenger side of Johns's window. (*Id.* ¶ 34.) The man asked how much it would cost to get to Hempstead Turnpike. (*Id.* ¶ 39.) Johns "did not want to drive [the man]," and suggested checking with Uber. (*Id.*) The man gave Johns "a guilt provoking story . . . , saying he could not get a lift and his wife was pregnant." (*Id.* (emphasis omitted).) The man then asked Johns "if he would take $40 for the lift." (*Id.* ¶ 40.) Johns "felt sorry for the [man], but told him that he had to get to his job." (*Id.*) Johns offered to take the man and his wife to "Fulton and Hempstead Turnpike[,] which was 15 minutes away from his home,

in the complaint by reference, or integral to the complaint, as well as matters of which judicial notice may be taken." (citing *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558–59 (2d Cir. 2016))). The Court "accept[s] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in [P]laintiff[s'] favor." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010)); *Hamilton v. Westchester County*, 3 F.4th 86, 90–91 (2d Cir. 2021) (same).

so that he could get to work on time, but that he would not be taking any money, because he could not take them all the way to their intended destination." (*Id.*) The man left to get his wife but did not return. (*Id.*) Instead, a uniformed TLC officer came over and asked Johns to give her his credentials. (*Id.* ¶ 41.) The officer issued a ticket and summons under the Street Hail Law and accused Johns of trying to get money from the undercover officer. (*Id.* ¶¶ 35, 41.) The uniformed officer had been "nowhere near" Johns's car and "did not hear the conversation with the plain clothes officer that had transpired[.]" (*Id.* ¶ 41.)

On October 19, 2022, Johns had a full hearing before the Office of Administrative Trials and Hearings ("OATH"). (*Id.* ¶ 27.) The OATH hearing officer did not find the testimony of the TLC officer who testified to be credible. (*Id.* ¶¶ 45–46.) Additionally, the officer who issued the ticket was not available to testify to what she allegedly saw. (*Id.* ¶ 45.) The OATH hearing officer concluded that "there was no clear credible testimony or evidence as to what exchange took place on the date of the stop to establish the respondent 'agreed' to a fare of $40 when the testifying officer was not able to recall the respondent or what was said during the interaction with the respondent." (*Id.* ¶ 46.) In contrast, the hearing officer found that Johns "was credible and forthcoming in his testimony that while he was willing to take the guy and his pregnant wife to the intersection to help them, he was not willing to take any money for the ride as he was on his way home and he needed to get to work." (*Id.*) Accordingly, the summons against Johns was dismissed. (*Id.*)

**B.    Lena Bowen**

Plaintiff Bowen lives in Connecticut and is a part-time driver for Lyft. (*Id.* ¶ 47.) On June 25, 2023, Bowen picked up a passenger in Greenwich, Connecticut. (*Id.* ¶ 48.) The passenger had requested a ride to JFK Airport through Lyft. (*Id.*) Bowen dropped the passenger off at the

airport at around 4:00 p.m.  (*Id.* ¶ 49.)  As Bowen was pulling away from the curb, a man, who turned out to be an undercover TLC officer, began knocking at her passenger side window.  (*Id.* ¶¶ 50, 56.)  The man asked Bowen if she was going to Connecticut and if she knew the address 15 Griffin Lane.  (*Id.* ¶ 50.)  Bowen told the man she was going to Connecticut, but did not know the address.  (*Id.* ¶ 51.)  The man said that the address was in Hartford, Connecticut, and asked if Bowen would bring him there.  (*Id.*)  Bowen declined and told the man she was not going to Hartford.  (*Id.*)  The man then asked Bowen what the closest Metro-North station to the airport was, and Bowen responded that she only knew of the station in Yonkers, New York.  (*Id.* ¶ 52.)  The man asked: "What do they usually charge?"  (*Id.*)  Bowen "had no intentions [sic] of taking him to Yonkers, but replied that Lyft usually charges about $45 dollars."  (*Id.*)  Bowen never agreed to take the man to Yonkers.  (*Id.*)  The man "said OK and walked away."  (*Id.*)  Bowen assumed that "these were general questions and that the conversation was over," and "rolled up her window to pull away."  (*Id.* ¶ 53.)

Suddenly, a TLC officer was knocking on the driver's side window and flashing a badge.  (*Id.*)  The officer asked Bowen to roll the window back down.  (*Id.*)  The officer said Bowen had just done "an illegal street hail," and asked to see Bowen's license and registration, which Bowen provided.  (*Id.* ¶ 54.)  Bowen was immediately given a summons for violating the Street Hail Law, despite Bowen's protests that she did not agree to give a ride to the man who had approached her vehicle, did not accept money, and did not let the man into her vehicle.  (*Id.* ¶¶ 54–55.)  The issuing officer had been too far away to have heard the conversation between Bowen and the undercover officer posing as a passenger.  (*Id.* ¶ 56.)

Bowen "never agreed to take an illegal hail" and "has a spotless driver's record."  (*Id.* ¶ 57.)  The purported violation may hurt Bowen's continued employment with Lyft, as Lyft's Driver's

4

Code of Ethics and Terms of Service require drivers to obey all laws and rules. (*Id.* ¶¶ 57–58.) The penalties for failing to abide by these terms can include termination of driving privileges for Lyft. (*Id.*) Bowen's OATH hearing had not yet occurred at the time the Amended Complaint was filed. (*Id.* ¶ 59.)[3]

## II.   Procedural History

Plaintiff Johns initiated this action on May 9, 2023. (Compl., Dkt. 1.) On July 18, 2023, Defendants requested a pre-motion conference ("PMC") regarding an anticipated motion to dismiss. (Defs.' PMC Ltr., Dkt. 18.) In response, Plaintiff Johns requested leave to amend the complaint. (Pl.'s PMC Response, Dkt. 19.) The Court granted leave to amend, (7/28/2023 Docket Order), and the Amended Complaint was filed on August 24, 2023, (Am. Compl., Dkt. 20).

The Amended Complaint names Johns and Bowen as plaintiffs and asserts the following "claims for relief" against Defendants: (1) "42 USCS [sic] § 1983; Fourteenth Amendment of the U.S. Constitution; Fourth Amendment of the U.S. Constitution; New York State Constitution §[]12; and New York State Common Law," (Am. Compl., Dkt. 20, at ECF[4] 14–16); (2) "Pecuniary Damages and the Improper Levy and Collection of Fines under the Eighth Amendment of the [U.S.] Constitution and New York State Constitution Article 1, Section 5, and Article 1, Section 8, Clause 3 of the U.S. Constitution known as the [C]ommerce [C]lause," (*id.* at ECF 16–17); (3) "Malicious Prosecution," (*id.* at ECF 17–19); and (4) "Punitive Damages," (*id.* at ECF 19). Plaintiffs also initiated this lawsuit as a putative class action and seek to certify seven subclasses of similarly situated individuals. (*See id.* at ECF 6, 12, 20–21.)

---

[3] As discussed *infra* p. 9 and note 6, the charge against Bowen was ultimately dismissed.

[4] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

On September 7, 2023, Defendants again requested a PMC for an anticipated motion to dismiss. (Defs.' 2d PMC Ltr., Dkt. 21.) The Court denied Defendants' PMC request as unnecessary, (9/19/2023 Docket Order), and adopted the parties' joint proposed briefing schedule, (9/26/2023 Docket Order). The motion was fully briefed on December 29, 2023. (*See* Defs.' Mot. to Dismiss ("Defs.' Mot."), Dkt 28; Pls.' Mem. Opp'n Defs.' Mot. ("Pls.' Opp'n"), Dkt. 29; Defs.' Reply Supp. Mot. to Dismiss ("Defs.' Reply"), Dkt 30.)

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The pleading standard does not require detailed factual allegations, but still "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In addressing the sufficiency of a complaint, a court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to credit

conclusory allegations or legal conclusions couched as factual allegations." *Hamilton*, 3 F.4th at 90–91.

## DISCUSSION

### I.    Plaintiffs' Eighth Amendment Claim Fails for Lack of Standing

Plaintiffs allege that the fines imposed for violating the Street Hail Law violate the Eighth Amendment's Excessive Fines Clause. (Am. Compl., Dkt. 20, ¶¶ 72–75.)  The Excessive Fines Clause provides: "Excessive bail shall not be required, nor excessive fines imposed[.]"  U.S. Const. amend. VIII.  The Supreme Court has interpreted the Excessive Fines Clause as "limit[ing] the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 609–10 (1993)) (internal quotation marks omitted).  The Court agrees with Defendants that "Plaintiffs have . . . failed to sufficiently allege an Eighth Amendment violation and lack standing to assert one with respect to the fines imposed pursuant to [the Street Hail Law]." (Defs.' Mot., Dkt. 28, at 6.)[5]

"Article III [of the Constitution] limits federal judicial power to 'Cases' and 'Controversies,' and standing to sue 'limits the category of litigants empowered to maintain a

---

[5] Although Defendants cite only FRCP 12(b)(6) in support of their motion to dismiss Plaintiffs' Eighth Amendment claim, the Court construes Defendants' motion as also arguing for dismissal under FRCP 12(b)(1) based on Plaintiffs' lack of standing to bring this claim.  In any event, the Court has an obligation to determine whether it has jurisdiction over a claim before resolving any FRCP 12(b)(6) motion as to that claim.  *See All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) ("[A] district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits."); *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry . . . ."); *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 72 (2d Cir. 2011) (summary order) ("Because the district court dismissed [plaintiff's] ADA claim for lack of standing, . . . it lacked jurisdiction to adjudicate [defendant's] alternative motion to dismiss for failure to state a claim.").

lawsuit in federal court to seek redress for a legal wrong.'" *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92 (2d Cir. 2019) (first quoting U.S. Const. art. III, § 2; then quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).   The purpose of the standing inquiry is to ensure that "the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* [*or her*] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)) (internal quotation marks omitted). Because "standing is not dispensed in gross," "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

"To establish standing 'a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to [the] defendant's conduct and (3) likely to be redressed by a favorable decision.'" *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (quoting *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009)).   "Where, as here, standing is challenged at the pleadings stage, a court must 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 322 (S.D.N.Y. 2018) (quoting *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998)).

Here, Plaintiffs challenge the constitutionality of the fines imposed on those found guilty of violating the Street Hail Law and seek "expungement and reimbursement with statutory interest." (Am. Compl., Dkt. 20, ¶¶ 72–75.)   However, the Amended Complaint does not actually allege that either Johns or Bowen was fined for violating the Street Hail Law.   (*See generally* Am. Compl., Dkt. 20.)   The case against Johns was dismissed at the OATH hearing, which occurred

before the Amended Complaint was filed, and Bowen's hearing had not yet occurred by the time of the Amended Complaint's filing. (*Id.* ¶¶ 46, 59.) "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Infinity Outdoor, Inc. v. City of New York*, 165 F. Supp. 2d 403, 431 (E.D.N.Y. 2001) (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995)) (concluding that excessive fines claim was not ripe where "no fine ha[d] been imposed, and no enforcement proceedings ha[d] been commenced against plaintiff"); *see also Lepper v. Village of Babylon*, No. 18-CV-7011 (JMA) (AYS), 2022 WL 939719, at *23 (E.D.N.Y. Mar. 29, 2022) (same), *aff'd sub nom. Lepper v. Scordino*, No. 22-1064, 2023 WL 4004220 (2d Cir. June 15, 2023).  Furthermore, both Johns's and Bowen's summonses were ultimately dismissed without an adjudication of guilt or the imposition of fines.  (*See* Am. Compl., Dkt. 20, ¶ 30; Notice of Decision, Devine Decl., Ex. A, Dkt. 31-1.)[6]  Thus, Plaintiffs have not suffered the harm alleged in their Eighth Amendment claim, and there is no fine for the Court to analyze or reimburse.  *See Simic v. City of Chicago*, 851 F.3d 734, 739 (7th Cir. 2017) (concluding that plaintiff lacked standing to bring Eighth Amendment claim where plaintiff had not paid any fine and was no longer liable for the ticket at issue, and

---

[6] The Court may take judicial notice of the OATH decision, which is a matter of public record, without converting Defendants' motion to dismiss into a motion for summary judgment. *See Gertskis v. U.S. E.E.O.C.*, No. 11-CV-5830 (JMF), 2013 WL 1148924, at *9 n.8 (S.D.N.Y. Mar. 20, 2013) ("The Court may take judicial notice of the transcript of the OATH hearing without converting Defendants' motions to dismiss into motions for summary judgment." (citing *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) ("[T]he Court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment."))), *aff'd sub nom. Gertskis v. E.E.O.C.*, 594 F. App'x 719 (2d Cir. 2014) (summary order).  Alternatively, the Court may look to "evidence outside the pleadings to resolve disputed jurisdictional fact issues," such as whether Plaintiffs have standing.  *See E. Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203, 208 (E.D.N.Y. 2001).  And even if the Court were confined to the allegations in the Amended Complaint, it would then dismiss Bowen's claims on ripeness grounds. *See Infinity Outdoor, Inc.*, 165 F. Supp. 2d at 431.

noting that plaintiff's participation in an administrative proceeding was not in itself sufficient to give rise to a redressable injury); *cf. Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 191, 194 (S.D.N.Y. 2019) (finding plaintiffs who allegedly paid fines that they claimed were wrongfully imposed had standing to bring Eighth Amendment claim, whereas claims brought by plaintiffs who had not yet paid were not ripe for adjudication).

Moreover, "the fact that Plaintiffs brought this case as a putative class action does not change whether Plaintiffs have standing: 'even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Torres v. City of New York*, 590 F. Supp. 3d 610, 626 (S.D.N.Y. 2022) (quoting *Spokeo, Inc.*, 578 U.S. at 338 n.6).

Accordingly, because Plaintiffs have failed to allege any injury with respect to their Eighth Amendment claim, they lack standing to bring that claim, and it is dismissed pursuant to FRCP 12(b)(1).

## II.     Plaintiffs Have Failed to State a Viable Fourth Amendment Claim

Plaintiffs assert a claim under 42 U.S.C. § 1983 for unreasonable seizure in violation of the Fourth Amendment of the United States Constitution.  (*See* Am. Compl., Dkt. 20, ¶¶ 3–5, 15, 62–67.)  Specifically, the Amended Complaint alleges that TLC officers stopped Plaintiffs and other drivers "without any valid reason whatsoever."  (*Id.* ¶ 63.)  Notably, however, the Amended Complaint does not name any TLC officers as defendants.  For the reasons discussed below, Plaintiffs' Fourth Amendment claim under § 1983 must be dismissed.

### A.     The TLC Is Not a Suable Entity

"To maintain an action under 42 U.S.C. § 1983, a plaintiff must allege that 'the conduct complained of [was] committed by a person acting under color of state law,' and that the conduct

'deprived [him] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Witharana v. NYC Taxi Limousine Comm'n*, No. 13-CV-4338 (ENV) (MDG), 2013 WL 5241987, at *2 (E.D.N.Y. Sept. 17, 2013) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  Here, Plaintiffs assert their § 1983 claim against the TLC, TLC Commissioner Do, and the City of New York.  (*See generally* Am. Compl., Dkt. 20.)  "Although [the] TLC is a state actor, it is well-settled that agencies of New York [C]ity are not suable under § 1983." *Witharana*, 2013 WL 5241987, at *2 (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007)) (dismissing § 1983 claim brought against TLC); *see also Nnebe v. Daus*, 644 F.3d 147, 158 n.6 (2d Cir. 2011) (affirming district court's dismissal of TLC as a party because "[i]t is well settled . . . that, as a general matter, agencies of New York City are not suable entities in § 1983 actions").  Accordingly, Plaintiffs' § 1983 claim against the TLC fails as a matter of law.

### B.     Plaintiffs Fail to Sufficiently Allege Municipal Liability As to the City

Plaintiffs also fail to plausibly allege a municipal liability claim against the City.  A municipality, like the City, may be liable under § 1983 if a municipal "policy or custom" caused a deprivation of constitutional rights.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 694 (1978); *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) ("[A] municipality can be held liable under [§] 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality.").  "A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the

plaintiff."  *Moran v. County of Suffolk*, No. 11-CV-3704 (PKC) (GRB), 2015 WL 1321685 (E.D.N.Y. Mar. 24, 2015); *see also Fleurimond v. Holder*, 403 F. Supp. 3d 95, 114 (E.D.N.Y. 2019) ("To demonstrate an official policy or custom, a plaintiff must show 'the existence of a formal policy which is officially endorsed by the municipality,' or a practice that is 'so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from the evidence of deliberate indifference of supervisory officials as to such abuses.'" (quoting *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015) (summary order))).  "For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege 'sufficient factual detail[ ]' and not mere 'boilerplate allegations' that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy."  *Broomes v. City of New York*, No. 22-CV-2807 (PKC) (MMH), 2024 WL 3823031, at *9 (E.D.N.Y. Aug. 13, 2024) (quoting *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases)).

The facts alleged in the Amended Complaint do not give rise to the inference that Plaintiffs' constitutional rights were violated as a result of a municipal policy or custom.  Plaintiffs have not alleged any facts in support of their *Monell* claim aside from boilerplate and conclusory allegations.  In support of their *Monell* claim, Plaintiffs conclusorily allege that that "TLC Officers, Supervisors, Policy Makers and Commissioners" have engaged in a "pattern and practice of hailing ordinary citizens that violates the constitutional rights of drivers," "are guided by a TLC policy," are "deliberately indifferent," and "have failed to supervise and train the [TLC officers] in what would constitute a proper enforcement of the law."  (*See* Am. Compl., Dkt. 20, ¶¶ 63–66.) However, "to survive a motion to dismiss, [Plaintiffs] cannot merely allege the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an

inference that such a municipal policy or custom exists.'" *See Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)).  "[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Id.* (collecting cases).  Because the Amended Complaint lacks any such factual details, Plaintiffs' *Monell* claim is dismissed.  *See id.* (dismissing *Monell* claim where complaint only contained "vague, conclusory allegations that the [municipality] permitted, tolerated, and covered up police abuses, while failing to discipline and supervise offending police officers"); *Bradley v. City of New York*, No. 08-CV-1106 (NGG), 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language—that the City 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees— is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused Plaintiff to be arrested without probable cause.").[7]

### C. Plaintiffs Fail to Allege Commissioner Do's Personal Involvement

Plaintiffs' § 1983 claim against Commissioner Do also cannot be maintained.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 206 (S.D.N.Y. 2013) (citing *Costello v. City of Burlington,* 632 F.3d

---

[7] Plaintiffs argue that the allegations in *Miller*, No. 23-CV-65, lend support to their *Monell* claim.  (Pl.'s Opp'n, Dkt. 29, at 12.)  The Court disagrees.  *Miller* has not resulted in an adjudication of liability, nor do the plaintiffs in that case assert a Fourth Amendment claim.  *See Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (finding complaint's reference to a "litany of other police-misconduct cases" failed to support *Monell* claim because they involved different issues "or something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct").

41, 48–49 (2d Cir. 2011)).  "[A] supervisory official cannot be held liable solely on the basis of the acts or omissions of his subordinates; [rather,] the supervisor must be personally involved in the alleged deprivation, and there must be 'an affirmative causal link between the supervisor's actions (or inactions) and the injury.'"  *Id.* (quoting *Turkmen v. Ashcroft*, 915 F. Supp. 2d 314, 334 (E.D.N.Y. Jan. 15, 2013)); *see also Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) ("A supervisor may not be held liable under [§] 1983 merely because his subordinate committed a constitutional tort.").  A plaintiff may establish a supervisor's personal involvement by showing: "(1) the [supervisor] participated directly in the alleged constitutional violation, (2) the [supervisor], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the [supervisor] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the [supervisor] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the [supervisor] exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring."  *Delee v. Hannigan*, 729 F. App'x 25, 31 (2d Cir. 2018) (summary order) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Plaintiffs do not allege that Commissioner Do directly participated in the purported Fourth Amendment seizures they experienced.  (*See generally* Am. Compl., Dkt. 20.)  Nor do Plaintiffs allege facts indicating that Commissioner Do had "actual or constructive notice of unconstitutional practices and demonstrate[d] gross negligence or deliberate indifference by failing to act."  *See Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) (quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989)).  In fact, the Amended Complaint only once references Commissioner Do by name: "Defendant [TLC] and David Do, its commissioner, have overall responsibility for establishing and enforcing TLC policy."  (Am. Compl., Dkt. 20, ¶ 20.)  But the

14

mere fact that Commissioner Do is generally responsible for "establishing and enforcing TLC policy" is not enough to demonstrate personal involvement or "an affirmative causal link between the supervisor's actions (or inactions) and the injury." *See Duncan*, 921 F. Supp. 2d at 206 (quoting *Turkmen*, 915 F. Supp. 2d at 334). Otherwise, a § 1983 claim would nearly always lie against supervisors for the conduct of their subordinates. *See id.* at 206–07 (explaining that "a plaintiff must show that the official's omissions were a 'substantial factor' resulting in the deprivation of a constitutional right"); *Rahman*, 607 F. Supp. 2d at 584–85 ("To avoid holding a supervisor liable solely for a subordinate's violations a court must apply 'rigorous standards of culpability and causation.'" (quoting *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000))). Because Plaintiffs have failed to plead Commissioner Do's personal involvement in their alleged injuries, or a causal link between Commissioner Do's actions and the constitutional violation alleged, their Fourth Amendment claim against Commissioner Do must be dismissed.

\* \* \*

Accordingly, Plaintiffs' Fourth Amendment claim is dismissed in its entirety pursuant to FRCP 12(b)(1) as to the TLC and FRCP 12(b)(6) as to Commissioner Do and the City.[8]

### III.    Plaintiffs Fail to State a Malicious Prosecution Claim

Plaintiffs assert a malicious prosecution claim under state and federal law. (Am. Compl., Dkt. 20, ¶¶ 76–85.) Under New York law, the elements of a malicious prosecution claim are: (1)

---

[8] As noted, Plaintiffs also assert an unconstitutional seizure claim under New York State law. Because the Court dismisses Plaintiffs' federal claims, it declines to exercise supplemental jurisdiction over the parallel state law claim to the extent that it is viable. *See Oneida Indian Nation of New York v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011) ("[W]e have repeatedly said that if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well." (quoting *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (internal quotation marks omitted))). Plaintiffs' unconstitutional seizure claim under state law is dismissed without prejudice to being brought in state court.

the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Where, as here, "the alleged malicious prosecution was [based on] a civil action," the plaintiff "must also demonstrate a 'special injury,' *i.e.*, 'some interference with the plaintiff's person or property beyond the ordinary burden of defending a lawsuit.'" *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 6 (2d Cir. 2013) (summary order) (quoting *Engel v. CBS, Inc.*, 145 F.3d 499, 502 (2d Cir. 1998)) (cleaned up). Additionally, to state a malicious prosecution claim under federal law, the plaintiff must allege that the defendant's conduct resulted in a constitutionally cognizable, post-arraignment deprivation of liberty implicating their Fourth Amendment rights. *See Bernshtein v. City of New York*, 496 F. App'x 140, 142 (2d Cir. 2012) (summary order); *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). "Courts have found a cognizable, post-arraignment deprivation of liberty where the individual was detained, or upon the placement of restrictions on the individual's ability to travel[.]" *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 263 (E.D.N.Y. 2015) (citations omitted) (citing *Murphy v. Lynn*, 118 F.3d 938, 944–46 (2d Cir. 1997)).

Here, Plaintiffs have failed to allege that Defendants deprived them of a cognizable liberty interest, and as such, their federal malicious prosecution claim must be dismissed. *See id.* at 263–64 (dismissing malicious prosecution claim brought under 42 U.S.C. § 1983 because plaintiff's allegations did not establish a cognizable deprivation of liberty). Although the Amended Complaint alleges that Plaintiffs were issued summonses and required to attend hearings and/or pay fines, (Am. Compl., Dkt. 20, ¶¶ 81–82, 84), it is well-established that having to participate in legal proceedings does not in itself amount to a deprivation of a cognizable liberty interest for the

purposes of a malicious prosecution claim. *See Parkash v. Town of Southeast*, No. 10-CV-8098 (VB), 2011 WL 5142669, at \*5–6 (S.D.N.Y. Sept. 30, 2011) (holding that having to appear in court, in itself, is insufficient to establish a Fourth Amendment deprivation of liberty for purposes of a malicious prosecution claim where plaintiff was not also restricted in his ability to travel); *Norton*, 97 F. Supp. 3d at 263–64 (finding plaintiff failed to establish a cognizable deprivation of liberty where plaintiff relied on court appearances and legal fees but did not allege that he was detained, arrested, or restricted in his travel). And even if the imposition of fines *could* amount to a deprivation of liberty under the Fourth Amendment, as discussed in the context of Plaintiffs' Eighth Amendment claim, neither Plaintiff was ultimately required to pay a fine in connection with the summonses. *See supra* pp. 8–9. Thus, Plaintiffs have failed to state a malicious prosecution claim under federal law.

Plaintiffs' claim under New York State law fares no better. The Amended Complaint alleges that Plaintiffs suffered "significant damages . . . in being mandated to attend the OATH Hearings and/or to pay the significant fine to avoid inconvenience, and to suffer significant dismay, anger, and indignation." (Am. Compl., Dkt. 20, ¶ 81.) Plaintiffs do not, however, "allege any special injury beyond the ordinary physical, psychological, or financial demands of defending [themselves] in [a] civil . . . proceeding." *McCaul*, 514 F. App'x at 5 (affirming dismissal of malicious prosecution claim, where plaintiff alleged "she spent thousands of dollars to retain an attorney and suffered distress and anxiety," because such allegations did not rise above the ordinary burdens of defending a lawsuit). And although Plaintiffs argue that the summons that Bowen received "subjects her to the disciplinary rules of Lyft," (*see* Pl.'s Opp'n, Dkt. 29, at 30; *see also* Am. Compl., Dkt. 20, ¶¶ 57–58), the Amended Complaint does not actually allege that any discipline arising out of the summonses came to pass, (*see generally* Am. Compl., Dkt. 20).

Accordingly, the Court grants Defendants' motion to dismiss pursuant to FRCP 12(b)(6) as to Plaintiffs' malicious prosecution claim.[9]

## IV.    Plaintiffs Fail to State a Commerce Clause Claim

Finally, Plaintiffs allege a claim under the Commerce Clause of the United States Constitution.  The Commerce Clause provides that "[t]he Congress shall have [p]ower . . . [t]o regulate Commerce . . . among the several States[.]"  U.S. Const. art. I, § 8, cl. 3.  The provision "also has a corresponding 'negative' or 'dormant' aspect that 'limits the power of local governments to enact laws affecting interstate commerce.'"  *N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 89 (2d Cir. 2016) (quoting *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 47 (2d Cir. 2007)).  "The Supreme Court has generally distinguished between two types of impermissible state or local regulations: (1) those that discriminate against out-of-state interests; and (2) those that do not discriminate against out-of-state interests, but have an incidental effect on interstate commerce."  *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 361 (S.D.N.Y. 2000).  "The first category of laws receive strict scrutiny, and are virtually *per se* violations of the Commerce Clause."  *Id.* (citing *Or. Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994)).  In contrast, "[l]aws that impose only incidental burdens on interstate commerce . . . are subject to a much more forgiving standard," and will be upheld "unless the challenger shows that the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits."  *N.Y. Pet Welfare Ass'n*, 850 F.3d at 90 (cleaned up).

---

[9] Defendants have asserted other bases for dismissing Plaintiffs' malicious prosecution claim, but the Court need not, and does not, reach the merits of those defenses here.  However, the Court notes that Plaintiffs' failure to name viable defendants also dooms their malicious prosecution claim.

Because the Amended Complaint does not allege that the Street Hail Law explicitly discriminates against out-of-state interests—indeed, Johns himself is a resident of New York, (Am. Compl., Dkt. 20, ¶ 31)—the Court interprets Plaintiffs' Commerce Clause claim to be premised on the Street Hail Law's incidental effects.  Plaintiffs allege that Defendants violated the Commerce Clause by "improperly stopping a licensed driver for hire coming from Connecticut to an international airport in New York City, without cause, and instead, in order to gain revenue for the City of New York and the [TLC], under pressure to achieve a ticket quota[.]"  (*Id.* ¶ 71.) However, the mere fact that an out-of-state driver (Bowen) was issued a summons under the Street Hail Law is not enough to plausibly allege a dormant Commerce Clause claim.  "Burdens supportive of an unconstitutional finding have been recognized in the following situations: 'regulations that have a disparate impact on in-versus out-of-state entities, laws that regulate beyond the state's borders, and laws that create regulatory inconsistencies between states.'" *VIZIO, Inc. v. Klee*, 886 F.3d 249, 259 (2d Cir. 2018) (quoting *N.Y. Pet Welfare Ass'n*, 850 F.3d at 91)).  Here, there are no factual allegations concerning the Street Hail Law's overall economic impact on interstate commerce, regulation of out-of-state conduct, or disproportionate enforcement against out-of-state drivers.  The one-time attempted enforcement of the Street Hail Law against Bowen is plainly insufficient for this purpose.  Accordingly, Plaintiffs' Commerce Clause claim is dismissed.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is granted. Plaintiffs' Amended Complaint is dismissed in its entirety.[10] The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 12, 2024
       Brooklyn, New York

---

[10] The Court's dismissal of this action should not be construed as an endorsement or approval of the seemingly overzealous, if not dishonest, conduct of the TLC officers with whom Plaintiffs interacted. But Plaintiffs were afforded the opportunity to both contest the charges brought against them, as well as reveal the allegedly improper conduct of the TLC officers, at the OATH hearings, and that system worked as it was intended, resulting in the charges against both Plaintiffs being dismissed.